IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **J.A., a minor, by and through his** | ) |
| **next friend, LASHAWN SWAIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 1:14-CV-0889-VEH |
| | ) |
| **TALLADEGA CITY BOARD OF** | ) |
| **EDUCATION, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

On May 12, 2014, Plaintiff J.A, a minor, by and through his mother and next friend, LaShawn Swain (hereinafter referred to as "Student"), initiated this action against multiple defendants. The action stems from Student's suspension from the Talladega City High School on or about January 17, 2014. (Doc. 1).

Student filed an amended complaint (Doc. 23) on July 11, 2014, that named seven defendants.[1] The claims included in this verified pleading are:  Count One for

---

[1] The seven defendants are:  (1) the Talladega City Board of Education (the "BOE"); (2) Charles Miller ("Mr. Miller"), individually and in his official capacity as Assistant Principal of the Talladega High School; (3) James Braswell ("Mr. Braswell"), in his official capacity as a BOE Member; (4) Juanita McClellan ("Ms. McClellan"), in her official capacity as a BOE Member; (5) Bonnie Miller ("Ms. Miller"), in her official capacity as a BOE Member; (6) Shirley Simmons-Sims

assault and battery against Mr. Miller; Count Two for assault and battery against the BOE; Count Three for negligent supervision against the BOE; Count Four for outrageous conduct against Mr. Miller; Count Five for outrageous conduct against the BOE; Count Six for violation of substantive due process rights under 42 U.S.C. § 1983 against the BOE; Count Seven for violation of § 504 of the Rehabilitation Act of 1973 against the BOE; and Count Eight for violation of Title II of the Americans With Disabilities Act against the BOE. (*See generally* Doc. 23 at 7-37).

Pending before the court is Plaintiff's Amended Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 13) (the "Injunction Motion") filed on June 6, 2014. The Injunction Motion requests that this court:

> [E]nter a Temporary Restraining Order and Preliminary Injunction enjoining Defendant Talladega City Board of Education and its agents, employees and/or servants from continuing any punishment or sanction against Plaintiff J.A. on account of him having been assaulted and/or abused by Defendant Charles Miller and subsequently having acted in self defense, on account of Defendant Board and/or its agents, employees, and/or servants violating his Fourteenth Amendment rights, and from interfering with his education, including the following:
>
> > a. prohibiting Plaintiff J.A. from attending his regular classes and instead requiring him to attend an alternative education program (if any program at all), where he does not have access to teachers; and

---

("Ms. Simmons-Sims"), in her official capacity as a BOE Member; (7) and Elizabeth Smith ("Ms. Smith"), in her official capacity as a BOE Member.

>    b. prohibiting Plaintiff J.A. from participating in various school and extracurricular activities, including but not limited to basketball and other athletic competitions.

(Doc. 13 at 21).

On June 9, 2014, the court entered an order that denied the ex parte temporary restraining part of the Injunction Motion and deferred ruling on the preliminary injunction portion until after Defendants had received proper notice of Student's lawsuit and his related request for injunctive relief. (Doc. 14 at 5-6). Defendant opposed the Injunction Motion on July 30, 2014. (Doc. 32). Student filed his reply on August 6, 2014. (Doc. 36). Finally, Defendants file a hearing brief (Doc. 43) on August 12, 2014.

Also pending before the court are Student's Motion for Leave To File Supplemental Witness List for Preliminary Injunction Hearing (Doc. 40) (the "Supplemental Motion") filed on August 11, 2014, and Defendants' Motion To Exclude Testimony of Barry G. Dickey (Doc. 42) (the "Dickey Motion") filed on August 12, 2014.[2]

The court held a hearing in Anniston, Alabama, on Tuesday, August 12, 2014, beginning at 2:00 p.m. Prior to the hearing, the parties reported to the court in their

---

[2] Also pending are several motions to dismiss which have not yet come under submission: (1) Motion To Dismiss (Doc. 26) filed by Mr. Miller on July 25, 2014; and (2) Motion To Dismiss Amended Verified Complaint (Doc. 29) filed by all of the remaining defendants on July 25, 2014.

Report of Parties' Planning Meeting that:

> The parties are unable to jointly agree on a discovery plan due to the pendency of the underlying juvenile criminal proceeding. The parties request the direction of the Court in the creation of a discovery plan and corresponding pretrial deadlines.

(Doc. 28 at 2 ¶ 3). During the hearing, Student explained that he desired to obtain injunctive relief in the form of an order that vacated the BOE's decision to suspend him as a result of the altercation that occurred with Mr. Miller and that permitted him to return to and complete his education at Talladega High School, subject to certain conditions applicable to this readmittance.[3]

Consistent with the oral rulings made in open court and as further amplified below, the Supplemental Motion is **DENIED**, the Injunction Motion is **DENIED**, and the Dickey Motion is **TERMED** as **MOOT**.

## II. Standard for Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that should be granted only if the moving party has clearly established: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened

---

[3] As clarified from the parties' briefing, while the initial recommendation was to expel J.A., Darren Anglin, the Principal of the Talladega High School ("Principal Anglin"), elected not to follow that recommendation and, instead, suspended J.A.

injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not be adverse to public interest. *See Cunningham v. Adams*, 808 F.2d 815, 818-19 (11th Cir. 1987) (setting forth injunctive elements); *see also United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (same); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (same); *Kaisha v. Swiss Watch International, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002) (same). The moving party carries the burden of persuasion as to each of these four elements. *See United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983), *reh'g denied*, 724 F.2d 978 (11th Cir. 1984) ("The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974))); *see also Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (same); *McDonald's Corp.*, 147 F.3d at 1306 (same).

When analyzing the first two elements, the review "require[s] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223,

1241 (11th Cir. 2005) (internal quotation marks omitted) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc)).

Granting a motion for a preliminary injunction is "the exception rather than the rule." *Lambert*, 695 F.2d at 539 (quoting *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)). A district court's order granting or denying a motion for preliminary injunction is reviewed on appeal for abuse of discretion. *See McDonald's Corp.*, 147 F.3d at 1306 ("[A] district court's order granting or denying a preliminary injunction [is reviewed] for abuse of discretion."); *see also Buckeye v. Baker Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (same) (citing *Jefferson County*, 720 F.2d at 1519). "Those judgments, about the viability of a plaintiff's claims and the balancing of equities and the public interest, are the district court's to make and we will not set them aside unless the district court has abused its discretion in making them." *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1171 (11th Cir. 2002) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1547 (11th Cir. 1987)). "When reviewing a district court's entry of a preliminary injunction, [the Eleventh Circuit] review[s] findings of fact under a clearly erroneous standard, and conclusions of law *de novo*." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1333 (11th Cir. 1996)).

"In order for a preliminary injunction to issue, the nonmoving party must have notice and an opportunity to present its opposition to the injunction." *Four Seasons Hotels and Resorts*, 320 F.3d at 1210. Sufficiency of notice "is a matter left within the discretion of the trial court." *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986). The notice requirement "implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 434, 94 S. Ct.1113, 1122 (1974). "[T]he underlying principal of providing the nonmoving party with notice and an adequate opportunity to respond is carefully honored by the courts." *Four Seasons Hotels and Resorts*, 320 F.3d at 1210 (internal quotation marks omitted) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2949 at 215). The decision to determine the appropriate amount of notice is left to the district court's discretion; in addition, short notice may be adequate under certain circumstances. 320 F.3d at 1212.

An evidentiary hearing is not always required prior to the issuance of a preliminary injunction; however, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp.*, 147 F.3d at 1312 (citing *All Care Nursing v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535 (11th Cir. 1989)).

When conflicting facts "place . . . in serious dispute issues central to [a party's] claims and much depends upon the accurate presentation of numerous facts, the trial court err[s] in not holding an evidentiary hearing to resolve these hotly contested issues." *Four Seasons Hotels and Resorts*, 320 F.3d at 1211 (internal quotation marks omitted) (quoting *All Care Nursing*, 887 F.2d at 1539).

### III.  Analysis

#### A.  Supplemental Motion

As clarified during the hearing, Defendants opposed Student's Supplemental Motion, which sought leave to belatedly add two witnesses to Student's witness list (Doc. 34) filed on August 6, 2014. For the reasons stated in open court, including Student's failure to carry his substantial burden of explaining why the deadline to file witness and exhibit lists established by the court's scheduling order (Doc. 31) entered on July 30, 2014, should be reopened for him, the Supplemental Motion is **DENIED**.

#### B.  Injunction Motion

##### First Element Favors Defendants

As set forth above, the first element that a plaintiff must satisfy in order to be successful in obtaining preliminary injunctive relief is a substantial likelihood that he will prevail on the merits. The court has assumed, for the purposes of the Injunction Motion, that Student is able to prove every fact that was brought up during the

hearing in his favor. Even so, Student is unable to meet this first threshold element for multiple reasons.

The undisputed ongoing prosecution of Student in Juvenile Court arising out of the incident that occurred between him and Mr. Miller negates this court's ability to issue the type of the injunctive relief sought here. In particular, Alabama Code § 16-1-24.1(c) provides:

> (c) If a person is found to have violated a local board of education policy concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person, <u>the person may not be readmitted to the public schools of this state until (1) criminal charges or offenses arising from the conduct, if any, have been disposed of by appropriate authorities</u> and (2) the person has satisfied all other requirements imposed by the local board of education as a condition for readmission.

Ala. Code § 16-1-24.1(c) (emphasis added).

As Defendants point out, the Attorney General of Alabama has issued an opinion concerning the scope of § 16-1-24.1 which is directly applicable in this case. (Doc. 32 at 2). More specifically, Attorney General Opinion 95-107, issued on January 13, 1995, to Hon. Roberta F. Pilcher, Superintendent, Elmore County Board of Education, provides in relevant part:

> **QUESTION 2**
>
> If the Board determines that a child has violated its policy concerning drugs, alcohol, weapons, physical harm to a person, or threatened physical harm to a person, and if criminal charges have been filed

against the child arising from the conduct on which the violation of Board policy was based, is the Board prohibited from readmitting the child to regular classes until the criminal charges are disposed of even if the child has satisfied all other requirements of the local board for readmission?

### FACTS AND ANALYSIS

Yes. Code of Alabama 1975, § 16-1-24.1(c) provides that a person may not be readmitted to the public schools until criminal charges resulting from the conduct have been disposed of. We have interpreted this section as referring to the regular classes of the public school system.

### CONCLUSION

A child against whom criminal charges have been made may not be readmitted to the regular classes of the public school system until the criminal charges have been disposed of.

238 Ala. Op. Atty. Gen. 28, 1995 WL 911747, at *2.

Further, in answering a subsequent question within this same opinion, the Attorney General clarifies that the filing of a Juvenile Court proceeding can constitute a "crime" within the meaning of § 16-1-24.1(c):

### QUESTION NO. 4

Is the filing of a petition in Juvenile Court against the child a "criminal charge or offense arising from the conduct" as defined in Section 16-1-24.1(c) of the Alabama Code 1975, so as to prevent the Board from readmitting the child to school?

### FACTS AND ANALYSIS

If the petition alleges an act designated a crime under the laws of this

state, then it should be considered, for purposes of § 16-1-24.1(c), that criminal charges have been filed against the child, and he may not be readmitted to regular classes until the petition has been disposed of.

## CONCLUSION

If a petition alleging conduct which would constitute a crime has been filed in Juvenile Court against a child, <u>he may not be readmitted to regular classes until the petition has been disposed of</u>.

*Id.* (emphasis added). Here, Student does not dispute that the petition filed against him in Juvenile Court alleges conduct which would constitute a crime.

While an opinion of the Alabama Attorney General is not binding on this court, it can be adopted as persuasive authority. Here, especially in the absence of any countervailing authority offered by the Student, the court finds Attorney General Opinion 95-107 to be instructive as to what measures are appropriately available to this court. Further, guided by Attorney General Opinion 95-107, assuming that the Student succeeds on every claim in his lawsuit, this court is, nevertheless, statutorily foreclosed from ordering the type of injunctive relief that the Student desires until the juvenile proceeding against him has concluded.

In his reply, Student points out that, in contrast to § 16-1-24.1(c), Ala. Code § 16-1-24.1(d) allows a person to return to school, subject to conditions, after a guilty conviction and that, as a result, it is simply unfair to treat Student, who has merely been charged as a juvenile, worse than a convicted juvenile in terms of each one's

access to conventional schooling. While Student's criticism of the wording used in these related provisions may be insightful,[4] he has not challenged the constitutionality of § 16-1-24.1(c) and, therefore, cannot escape its ongoing force and effect as an unambiguous bar to his injunctive efforts.

Importantly, Student has offered no authority which even persuasively establishes that this court may permissibly override § 16-1-24.1(c)'s unequivocal mandate by way of an injunction. Moreover, even if the court had the discretion to undertake such an action, it would, nonetheless, decline to exercise its authority to do so in such an unusual manner, especially given the extraordinary nature of injunctive relief generally.

The still pending prosecution also raises additional questions about the Student's ability to prevail on the merits. More specifically, Student's request for injunctive relief has a strong likelihood of becoming moot because, as a Student who is currently in the eleventh grade, by the time he is free to pursue this federal case without risking self-incrimination, he may be too old for an order returning him to high school, or he may have finished his high school education. Also, a criminal

---

[4] As discussed during the hearing, § 16-1-24.1(d) is permissively structured and does not require that a school board return a convicted student to the classroom. In contrast, § 16-1-24.1(c)'s terminology leaves no discretion (*i.e.*, "may not be readmitted") for the school board to return the pupil to school until any criminal charges relating to that board's disciplinary measure have finally concluded.

conviction on the petition that he assaulted Mr. Miller potentially undermines Student's ability to pursue his § 1983 count against any of the defendants under the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994) ("Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.") as further clarified in *Wilkinson v. Dotson*, 544 U.S. 74, 82, 125 S. Ct. 1242, 1248, 161 L. Ed. 2d 253 (2005) ("These cases [including *Heck*], taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—<u>no matter the relief sought</u> (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis by underlining added).

Further, Defendants also have pointed out the numerous legal deficiencies in Student's efforts to obtain injunctive relief, including: (i) Student does not have a state constitutional right to a public education (Doc. 32 at 5-6); (ii) Student's substantive due process rights under the fourteenth amendment are not triggered by

his suspension (Doc. 32 at 6-11); (iii) the Student's procedural due process rights under the fourteenth amendment have not be violated because he was able to present his side of what transpired at the disciplinary hearing held on March 18, 2014, and no additional due process was owed to him (*id.* at 11-16); (iv) Student has not asserted an equal protection claim (*id.* at 17); and (v) Student's alleged offense (*i.e.*, battery upon a school board employee) and the resulting punishment of a school suspension prior to any criminal adjudication do not satisfy the narrow "shocking disparity" exception that would permit this court to constitutionally intervene and modify the BOE's disciplinary decision (*id.* at 17-18).

Additionally, during the hearing, Defendants argued that the defense of administrative exhaustion creates a significant obstacle to Student's attempt to show a procedural due process violation.[5] More specifically, before Student is able to legally challenge the BOE's treatment of him, he must first exhaust the criminal proceedings still pending in Juvenile Court and, second, he must exhaust the civil proceedings available to him, including an appeal to state circuit court, if the BOE does not return him to the high school as an ordinary pupil subsequent to the conclusion of the criminal proceedings.

Student's response to Defendants' arsenal of legal attacks lacks any helpful

---

[5] Student's most recently amended pleading only asserts a substantive due process count.

authorities and is unconvincing. Student's primary opposition, as developed during the hearing, is that, from a federal standpoint, it is simply fundamentally unfair to punish him by taking away his privilege to attend high school prior to any criminal adjudication by the state. However, fundamental fairness and federal constitutionality are not always synonymous. Instead, many times the United States Constitution merely provides a floor with respect to the infringement upon certain individual rights while a state constitution bestows its citizens with broader protections. *Cf., e.g., Padgett v. Donald*, 401 F.3d 1273, 1281-82 (11th Cir. 2005) ("The Georgia Constitution gives its citizens a right to privacy that is broader than that recognized by the United States Constitution."). Here, no Constitutional violation has been shown and the State of Alabama is not required to afford Student more.

In sum, for a host of legal reasons, Student has not persuaded the court that he has a substantial likelihood of prevailing on the merits of those claims which he contends entitle him to an order returning him to high school or, alternatively, even in assuming he will win on each one of his claims, that the relief he seeks, specifically, a federal court injunction requiring Defendants to violate Alabama law, is appropriate. Accordingly, for all these reasons, the Student has not met his burden on the first element.

**Second Element Favors Defendants**

Student also has not shown that he has or that he will suffer irreparable injury absent injunctive relief. As raised during the briefing process and reiterated by counsel for Defendants during the hearing without contradiction by Student, Student "has, since he was suspended, received homebound services from the Board, including a tutor, and has remained on track to graduate with his projected class." (Doc. 32 at 5).

Further, while Student's suspension has prevented him from playing basketball and engaging in other extracurricular activities, binding precedent makes it clear that this type of injury simply does not constitute a cognizable due process claim:

> The contention that LHSAA failed to give reasonable notice of the pertinent eligibility rules alleges a denial of due process, though both the court and the appellees denominate it an equal protection violation. For better or worse, the due process clause of the fourteenth amendment does not insulate a citizen from every injury at the hands of the state. 'Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection of the states.' <u>The privilege of participating in interscholastic athletics must be deemed to fall in the latter category and outside the protection of due process</u>.

*Mitchell v. Louisiana High School Athletic Ass'n*, 430 F.2d 1155, 1157-58 (5th Cir. 1970) (footnotes omitted) (emphasis added); *cf. Marner ex rel. Marner v. Eufaula*

*City School Bd.*, 204 F. Supp. 2d 1318, 1323 (M.D. Ala. 2002) ("While assignment to the alternative school, like suspension, means that a student cannot participate in extracurricular activities, such a deprivation does not implicate constitutional rights.").

Student has not pointed to any authorities which either distinguish or bring into question either the *Mitchell* or *Marner* holding. Additionally, if Student were to decide to attend a private institution in order to be able to participate in extracurricular activities or to have the kind of social interaction that a student tends to get in a classroom setting (as opposed to a tutorial situation), then that would turn Student's claim into one for monetary relief, which never constitutes irreparable injury. *See Northeastern Florida Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").Thus, the court finds that the Student has not carried his burden on the second injunctive factor.

### Third Element Favors Defendants

The third element requires the Student to show that any threatened injury to Student outweighs the harm that injunctive relief would cause Defendants. Here, Student cannot meet his burden for at least two reasons. First, any order returning the Student to the high school, whether in the same status that he held as of January 16,

2014, or even subject to certain restrictions, <u>before</u> his juvenile proceeding has concluded, would require Defendants to violate Alabama law, specifically Ala. Code § 16-1-24.1(c).

Second, as implicitly, if not directly, conceded by Student, he is currently receiving homebound educational services supplied by the BOE, is still on track to graduate, and also has been offered a tutor to aid in his studies while he remains suspended. Accordingly, any threatened injury to him is minimal and does not outweigh the harm that would be caused in ordering injunctive relief that would substantially undermine the BOE's decision-making process and authority to discipline its students. *Cf. Enterprise City Bd. of Educ. v. C.P.*, 698 So. 2d 131, 133 (Ala. Civ. App. 1996) ("The trial court's judgment reversing the decision of the school board sends a signal that the board's policy and state law will not be strictly enforced."). Therefore, Student has not carried his burden on the third element.

### **Fourth Element Favors Defendants**

The fourth element requires Student to demonstrate that an injunction in his favor would serve the public interest. For many of the same reasons discussed above, Student similarly fails to satisfy this final factor. In particular, because the injunction desired by Student is in contravention of Alabama law, the public interest of "ensuring that schools are made safe and drug-free for all students and school

employees" as defined by the Alabama Legislature in Ala. Code § 16-1-24.1(a) would be hindered by such an order, rather than supported by it.

### C. Dickey Motion

In considering the merits of the Injunction Motion, the court assumed that any disputed areas of evidence and/or credibility would be resolved in favor of Student. As a result, holding an evidentiary hearing to resolve "bitterly contested" issues within the meaning of *McDonald's Corp.*, cited *supra*, was unnecessary. Consequently, no witnesses were called to testify, rendering the Dickey Motion **MOOT**.

### IV. Conclusion

For all the reasons stated above, the Supplemental Motion and the Injunction Motion are **DENIED**, and the Dickey Motion is **TERMED** as **MOOT**.

**DONE** and **ORDERED** this the 15th day of August, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge